**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

In re: Appeal of Paul and      }
Eileen Growald              }
                                  }    Docket No. 236-10-00 Vtec
                                  }
                                  }

## <u>Decision and Order</u>

Appellants Paul and Eileen Growald appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Shelburne granting conditional use approval to Appellee-Applicant Shelburne Museum, Inc. Appellee-Applicant has received site plan approval of the project, which is not before the Court. Appellants are represented by James E. Knapp, Esq. and Craig Weatherly, Esq.; Appellee-Applicant is represented by R. Jeffrey Behm, Esq. and Eric E. Hudson, Esq.; the Town is represented by Amanda S.E. Lafferty, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law; in the course of those submissions, Appellee-Applicant has modified its proposed uses. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows. For ease of understanding, some of the findings and conclusions of the summary judgment order are repeated here.

Appellee-Applicant owns property known as the Brick House property on a fourteen- acre lot located at 387 Quaker Smith Point Road in the Town's R1 (Rural) zoning district. The Brick House property is adjacent to Shelburne Farms (a Planned Unit Development[1] approved as an Historic Mixed Use PUD under the zoning bylaws in effect at the time), to Appellants' residential property (formerly known as Valley View House) to the north, and to another single-family residential property to the south.

The oldest portion of the Brick House was in existence as of the early nineteenth century. In 1910, the Brick House and substantial acreage was given as a wedding present to James Watson Webb and his wife, Electra Havemeyer Webb. They renovated the house and built additions in 1913 and 1920, including a wing with servants' bedrooms. The Webbs lived in the Brick House for at least part of each year between 1913 and 1947, when Mrs. Webb founded the Shelburne Museum, and for a greater part of each year after 1947. A two-bedroom apartment was added to the rear of the Brick House in the late 1940s.

Mrs. Webb stored and displayed her substantial collection of American folk art at the Brick House until the founding of the Museum in 1947, when much of that collection was transferred to the museum buildings. Mrs. Webb resided at the Brick House until her death in 1960, after which her son, J. Watson Webb, Jr., lived at the Brick House for about five months of each year until his death in 2000. From 1947 to Mrs. Webb's death in 1960, Mrs. Webb from time to time hosted museum trustees, donors, visiting collectors and scholars in the house, maintained a staff

of servants, and hosted large gatherings of guests, including for weddings and other events. From 1960 to J. Watson Webb, Jr.' s death in 2000, when Mr. Webb was in residence he also held these functions at the Brick House.

As of the adoption of zoning in Shelburne in 1963, the Brick House had reached its present configuration as a 47-room large historic house with many bedrooms, and a separate but attached two-bedroom apartment. The apartment has been used for a caretaker or property manager from at least 1975 to the present.

The Brick House property (then including a large barn and several hundred additional acres later conveyed to Shelburne Farms) was conveyed in 1986 to Appellee-Applicant by the sons of Electra Havemeyer Webb, retaining for J. Watson Webb, Jr. the right to use the Brick House property during his lifetime. From 1986 to the date of the present application, Appellee-Applicant from time to time hosted museum trustees, donors, visiting collectors and scholars in the house, maintained at least a caretaker in the apartment, and hosted events in the house, including New Year' s parties and private weddings. After the death of J. Watson Webb, Jr., in 2000, Appellee-Applicant purchased the historic contents of the Brick House from Mr. Webb' s estate. Appellee-Applicant does not propose any exterior changes to the Brick House structure or property. There is room to park more than ninety cars on the Brick House property, by using the parking areas surrounding the house and managed parking on the lawn flanking the tree-lined drive in front of the house.

The essential character of the neighborhood in which the property is located is a that of a very large, originally unified historic lakeside estate, containing large historic houses, barns, farmhouses, outbuildings, and agricultural land, together with newly-built large residences on large lots, some of which (including Appellants' ) are leased from Shelburne Farms. The area can be described as Shelburne Farms and its inholdings. Many of the large homes and other buildings have views over neighboring properties towards Lake Champlain. Shelburne Farms is operated as a very large working farm, environmental study center, and historic house inn, all of which is open to the public. It includes several large barns used for public functions and educational programs, and a large historic house now used as a 24-bedroom historic inn and public restaurant. Public attendance at functions on the Shelburne Farms property occasionally exceeds several thousand for outdoor functions such as the annual Harvest Festival and a recent Earth Charter event.

When the Brick House was privately owned, the Webbs hosted at least six large events a year, as well as hosting hunts, hunt breakfasts and hunt balls of 75 to 100 people including the surrounding landowners and farmers. Other large private homes in the area such as the Linthilacs or Sam Webb' s father also held large events of over 150 people frequently. In the American country house tradition, wealthy families would tend to host visitors in their homes rather than to expect guests to stay in hotels; in this respect all the largest private homes in the area functioned like small hotels for the guests of the family.

The entire area is separated from the nearest public road, Harbor Road, by a stone wall; all the roadways within the area are private roads owned and maintained by Appellee-Applicant, by Shelburne Farms, or by the other homeowners or lessees of the property. Vehicle access to

Shelburne Farms and its inholdings and private roads is through two gates from Bostwick or Harbor Road. The North Gate has a gatehouse which is staffed by guards during the season during which the inn and restaurant is open for business (approximately mid-May through mid-to-late October). The South Gate is closed by a swinging gate operated by an electronic code. Distribution of the code[2] is managed by Shelburne Farms and distributed to residents and persons working at the properties, including the staff of Appellee-Applicant, and including temporary construction workers such as those who worked on Appellants' house.

Access to the Brick House property is via a private road known as Quaker Smith Point Road, and a long tree-lined driveway to the Brick House itself. Quaker Smith Point Road only gives access to the Brick House and a few other properties. A short segment of it presents a steep section that could pose difficulties in winter conditions for drivers without snow tires or winter-capable vehicles. Appellants' 47-acre property runs from Quaker Smith Point Road generally northeasterly and uphill to the location of Appellants' house, terrace, and swimming pool. Access to Appellants' house is via an extension of the private road giving access to the Farm Barn at Shelburne Farms, although Quaker Smith Point Road runs along the southerly side of Appellants' property, and there is utility or emergency access to the lower elevations of Appellants' property from Quaker Smith Point Road, across from the entrance to the Brick House driveway. Traffic on Quaker Smith Point Road can be seen at a distance of a quarter-mile or more, from various locations on Appellants' property, although the Brick House itself cannot be seen from Appellants' house itself. The Brick House is approximately 3/4 of a mile from Appellants' house. Appellants were in residence at their home during weddings held at the Brick House in September 2001, did not hear the music and were not disturbed by the event. Appellants sometimes hear music or traffic noise from events held at the Shelburne Farms Barn, which they can see from their house.

Appellee-Applicant has applied for conditional use approval for the following uses at the Brick House. The limitations or conditions now proposed as acceptable to Appellee-Applicant are incorporated in the project description for each use, to the extent they were clearly stated in the evidence. Where they are not clear in the evidence the Court has noted that fact or imposed a clarifying condition. For example, although it was not explicitly laid out in the application, Appellee-Applicant has proposed that a museum staff member would be in residence at the Brick House during all of the proposed uses.

The Court had already ruled on summary judgment that Appellee-Applicant's proposed uses of the Brick House for short-term[5] housing for visiting scholars and interns, for summer season[3] house tours, for accommodation and entertainment of Museum trustees and prospective donors, and for rental of the two-bedroom apartment, were all of the same general character as other permitted or conditional uses in the district, under § 320.14(1). For those uses, at trial the parties presented evidence as to whether such uses will be detrimental under § 320.14(2) and whether they otherwise meet the conditional use standards of § 1610.

With regard to the proposed rental of the Brick House to private parties unrelated to the Museum, such as for weddings or corporate meetings, at trial the parties presented evidence as to whether such uses are of the same general character as permitted or conditional uses in the district, under § 320.14(1), as well as presenting evidence as to whether such uses will be

detrimental under § 320.14(2) and whether they otherwise meet the conditional use standards of § 1610[4], subsections (2), (3) and (5).

Short-term housing for visiting scholars and interns

Appellee-Applicant proposes to provide, in the six separate bedrooms originally constructed to house the domestic staff of the Brick House, short-term housing for no more than six visiting scholars and interns at any time. No meals will be provided at the Brick House by Appellee-Applicant for any of these six persons, but they would have the use of a kitchen. This use would generate at most the traffic expected from a residential use by up to six adults each with a vehicle, although in general Appellee-Applicant transports the interns to their work at the Museum in a single van. As the Court ruled on summary judgment, in order for this use to be of the same general character as the single-family use of a very large historic house for its invited guests, plus its use as a four-bedroom bed and breakfast or private guest house, a member of the museum staff must reside on the premises at any time that any visiting scholars or interns are in residence.

As described, the proposed use for short-term housing for no more than six visiting scholars and interns will not be detrimental to the adjoining land uses, including Appellants' residential use, nor to other uses in the district. The comings and goings of these visitors will be no more obtrusive than those of visitors or guests or even the resident staff of a large household. Therefore this use may be considered for approval under the conditional use standards. § 320.14(2). This limited use of the Brick House for short-term housing for visiting scholars and interns will not adversely affect the character of the area, and will not adversely affect the essential character of the neighborhood or district nor substantially nor permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare. § § 1610(2) and (5). The character of the area includes the environmental education functions of Shelburne Farms, and its model or demonstration farming operation, not merely the large single family residences, and may be expected to have a few visiting educators, researchers, scholars or interns in the area without adversely affecting its character.

No effect on traffic on any public road or highway has been suggested in this litigation; the only issue is the effect of the traffic generated by this use on the traffic on Quaker Smith Point Road. Very little traffic uses Quaker Smith Point Road; no evidence was presented to suggest that the little traffic generated by the presence of the scholars and interns would have any effect on the traffic already using Quaker Smith Point Road. The proposed use for short-term housing for no more than six visiting scholars and interns will not adversely affect traffic on roads and highways in the vicinity. § 1610(3).

The proposed use of the Brick House property for short-term housing for no more than six visiting scholars and interns thus meets the conditional use standards of § 1610, and is hereby APPROVED, subject to the conditions that a member of the museum staff must reside on the premises at any time that any visiting scholars or interns are in residence, that no more than a total of six scholars and interns may be in residence at any given time, and that the residency period of any scholar or intern not exceed six months.

<u>Tours of the Brick House</u>

Appellee-Applicant proposes to provide tours of the Brick House during the Museum's summer season of mid-May through its closing date in mid-October. The Town argues that the ZBA only reviewed this use for July and August. While the evidence reflects that Appellee-Applicant may have intended to apply for tours to take place during its extended summer season from May through October, the fact remains that the ZBA in its conditions allowed the tours only in July and August, and the applicant did not appeal that limitation. Accordingly, all that is before the Court is the question of tours during July and August. Appellee-Applicant is free to return to the ZBA for an amendment to allow the tours to occur during May, June, September or October. By this ruling the Court makes no determination of whether tours during those months should or should not be approved.

With regard to the tours during July and August, Appellee-Applicant proposes a schedule of one tour per day during normal business hours[6] on four of the five weekdays[7] each week and up to two tours per day on the two weekend days each week. Appellee-Applicant proposes to limit participation in these tours to up to 12 tour guests plus up to 3 staff members per tour, including the van driver, all transported to the Brick House in a single Museum vehicle. No food would be served or available during these tours. One to three museum employees will be present for each tour and each tour group will be accompanied by a tour guide, will be required to stay together as a group and will not be allowed to wander onto neighboring property. In connection with these tours, Appellee-Applicant suggests that it will " take steps, such as the distribution of maps, to ensure that Brick House guests do not wander" onto adjacent property. However, for the incidental house tour participant, as opposed to a guest or resident scholar, the ' distribution of maps' will not be sufficient for this purpose, and the Court will require that a museum employee accompany the tour group at all times, including in the grounds.

With these conditions, the proposed use of the Brick House for house tours once or twice a day will not be detrimental to the adjoining land uses, including Appellants' residential use, nor to other uses in the district. Therefore it may be considered for approval under the conditional use standards. § 320.14(2). With these conditions, the proposed use of the Brick House for house tours will not adversely affect the character of the area, and will not adversely affect the essential character of the neighborhood or district nor substantially nor permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare. § § 1610(2) and (5). One or two van-loads of 15 people, coming to the Brick House once or twice a day during July and August, will not be a detriment to adjacent property or the public welfare. It will not adversely affect the character of the area or neighborhood, which is a mixed use of large residential properties, and a working demonstration farm, environmental education center, inn and restaurant, visited by the public on a more intensive basis than the proposed house tour use.

The proposed use of the Brick House for one or two house tours a day will not adversely affect traffic on Quaker Smith Point Road or any other highway in the vicinity. § 1610(3). It involves only a single round trip on four of five weekdays, plus up to two round trips on weekends, during two months of the year. No effect on traffic on any public road or highway has been suggested in this litigation; the only issue is the effect of the traffic generated by this use on the traffic on Quaker Smith Point Road. Very little traffic uses Quaker Smith Point Road; no

evidence was presented to suggest that the negligible traffic generated by one or two round trips per day of a van would have any effect on the traffic already using Quaker Smith Point Road. The proposed use of the Brick House for one or two house tours a day will not adversely affect traffic on roads and highways in the vicinity. § 1610(3)

With these conditions, the proposed use of the Brick House for house tours in July and August on the proposed schedule of one tour per day on four weekdays, plus two tours per day on the weekend days thus meets the conditional use standards of § 1610, and is hereby APPROVED, subject to the conditions that only one tour group may be present on the property at any time, that the tour group van shall not arrive at the Brick House property any earlier than 9 a.m. and shall not leave any later than 5 p.m., that no meals or refreshments be served, that at least one Museum staff member shall accompany each tour group at all times, and that Appellee-Applicant shall specify at the beginning of each summer season which four weekdays it proposes to offer tours and inform the Town and Appellants in writing of that choice prior to the opening of the house tour season.

Weekly rental of the two-bedroom apartment

Appellee-Applicant proposes to offer the rental of the two-bedroom apartment for a maximum for forty weeks in any calendar year for a minimum of one-week[8] and a maximum of two-week occupancy periods, through an historic property rental agency: the Landmark Trust. Each rental is proposed to be limited to a maximum of four persons occupying beds, plus the availability of a crib for an additional small child. Appellee-Applicant does not propose to prepare or serve meals, but the occupants would have the use of the apartment's kitchen. Appellee-Applicant proposes as a condition of the rental agreement that the occupants would be limited to a single vehicle, that rental of the apartment would not be available to the participants in any private event (see below), and that a member of the museum staff would be in residence on the main house premises at any time that the two-bedroom apartment is in rental use.

With an additional condition that the rental agreement clearly specify the limits of the Brick House property and contain a clause prohibiting trespass on adjoining private property, the proposed use for rental of the apartment for up to forty weeks in the year to up to five persons with a single vehicle will not be detrimental to the adjoining land uses, including Appellants' residential use, nor to other uses in the district. The comings and goings of these visitors will be no more obtrusive than those of residents, visitors or guests or even the resident staff of a large household. Therefore this use may be considered for approval under the conditional use standards. § 320.14(2). This limited rental of the apartment, even with the use of the Brick House for other short-term housing for visiting scholars or interns or accommodation of museum-related guests, will not adversely affect the character of the area, and will not adversely affect the essential character of the neighborhood or district nor substantially nor permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare. § § 1610(2) and (5). As noted above, the character of the area includes the public functions at Shelburne Farms, including the inn and restaurant, and environmental education center, and not merely the large single family residences on or within its property.

With an additional condition in the rental agreement, the proposed use for rental of the apartment for up to forty weeks in the year to up to five persons with a single vehicle will not adversely affect traffic on roads and highways in the vicinity. § 1610(3). No effect on traffic on any public road or highway has been suggested in this litigation; the only issue is the effect of the traffic generated by this use on the traffic on Quaker Smith Point Road. Very little traffic uses Quaker Smith Point Road; no evidence was presented to suggest that the little traffic generated by the presence of the occupants of the apartment would have any effect on the traffic already using Quaker Smith Point Road, except if it should block the road during winter conditions. Because a portion of Quaker Smith Point Road may be difficult to traverse in winter conditions without a winter-capable vehicle, and could therefore adversely affect traffic on that private road for that reason, any rental of the apartment in the winter months must require the use of such a vehicle. With this condition, the proposed use for rental of the apartment for up to forty weeks in the year to up to five persons with a single vehicle will not adversely affect traffic on roads and highways in the vicinity. § 1610(3)

The proposed use of the Brick House property for rental of the apartment for up to forty weeks in the year thus meets the conditional use standards of § 1610, and is hereby APPROVED, subject to the conditions that a member of the museum staff shall be in residence on the main house premises at any time that the two-bedroom apartment is in rental use; that the rental period for the apartment be for a minimum of one week and a maximum of two weeks; that each rental is limited to a maximum of four persons occupying beds, plus the availability of a crib for an additional small child; that rental of the apartment shall not be available to the participants in any private (non-museum-related) event during that event; and that the rental agreement shall require that the occupants are limited to the use of a single vehicle, shall require for rentals in the winter months that the vehicle must be equipped for winter conditions, and shall clearly specify the limits of the Brick House property and shall prohibit trespass on adjoining private property.

Museum-related events and accommodation

Appellee-Applicant proposes to provide museum-related events in the Brick House in furtherance of the Museum's functions and mission, including holding board and committee meetings, art history seminars, and prospective donor and trustee entertainment at the Brick House. Present and prospective trustees and donors are proposed to be accommodated overnight at the Brick House in connection with these events, limited as follows. Appellee-Applicant proposes to limit these museum-related events to no more than thirty events per year, with no such events to occur on the same weekend as a private event (see below). Of these thirty events, Appellee-Applicant proposes to hold no more than two large events (involving up to 200 people at the property[9] for each event) per year (such as a New Year's Eve gala or a Summer Tea) and no more than twelve medium events of up to fifty persons. Appellee-Applicant proposes that no more than 90 vehicles[13] may be present on the premises at any time in connection with any such event. For large and medium events held by invitation, Appellee-Applicant proposes to staff the South Gate with sufficient security personnel to examine the invitations and to open and close the gate, so that the security code (see footnote 2 above) will not be released to large numbers of people and so that the numbers limitations may be enforced. For large events, Appellee-Applicant proposes to post museum personnel as parking facilitators to direct guest parking on the Brick House property and to prevent guests from parking along Quaker Smith Point Road.

Appellee-Applicant proposes to serve meals, primarily dinner, at these events, although breakfast and lunch may be served to overnight guests, and presumably some type of lunch or buffet or sandwiches would be served to participants at all day meetings or seminars.

As the Court ruled on summary judgment, in order for this use to be of the same general character as the single-family use of a very large historic house for its invited guests, plus its use as a four-bedroom bed and breakfast or private guest house, a member of the museum staff must reside on the premises at any time that the house is in use for meetings, events and accommodation for museum-related guests. Overnight occupancy of the Brick House in connection with such events will not exceed 15 persons per night, which may include up to three museum staff people including the resident manager and twelve museum-related guests, not including any visiting scholars or interns and any occupants of the apartment who may also be in residence at the time of the event. In connection with the house tours discussed above, Appellee-Applicant suggested that it will " take steps, such as the distribution of maps, to ensure that Brick House guests do not wander" onto adjacent property. However, at museum-related events, the ' distribution of maps' will not be sufficient for this purpose; the invitations or confirmation of registration or attendance at such events must not only give directions to the property but must also clearly specify the limits of the Brick House property and prohibit trespass on adjoining private property.

With the above limitations and conditions, the proposed use of the Brick House for these proposed museum-related events and overnight accommodations will not be detrimental to the adjoining land uses, including Appellants' residential use, nor to other uses in the district. These numbers, types and sizes of events are similar to the types of events held at the Brick House when Mrs. Webb was in residence, and are those that may be expected at a large private house plus a four-room bed and breakfast. Therefore it may be considered for approval under the conditional use standards. § 320.14(2).

The proposed use for museum-related events and overnight accommodations will not adversely affect the character of the area, and will not adversely affect the essential character of the neighborhood or district nor substantially nor permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare. §§ 1610(2) and (5). As discussed above, the character of the area includes the public functions at Shelburne Farms, including the inn and restaurant, and environmental education center, and as well as the large single family residences on or within its property. The character of the area includes the year-round large business and private functions related to the owners of the large private houses in the area. At most, Appellants will notice the vehicles going to and from the museum-related events on Quaker Smith Point Road, but that level of traffic will be occasional and will be that which might be expected to be generated by the business, professional, and family activities of a very large private house plus a four-room bed-and-breakfast. Appellants should not be adversely affected by the events themselves in any way.

No effect on traffic on any public road or highway has been suggested in this litigation; the only issue is the effect of the traffic generated by this use on the traffic on Quaker Smith Point Road. Very little traffic uses Quaker Smith Point Road; no evidence was presented to suggest that the traffic generated by the proposed museum-related events would have any effect on the

traffic already using Quaker Smith Point Road. Moreover, this traffic has not in the past blocked the road during winter conditions. The proposed use of the Brick House for museum-related events and overnight accommodations will not adversely affect traffic on roads and highways in the vicinity. § 1610(3).

As limited by the conditions described above, the proposed use of the Brick House property for museum-related events and overnight accommodations thus meets the conditional use standards of § 1610, and is hereby APPROVED.

Rental of the property for private events such as weddings or corporate meetings

Appellee-Applicant also proposes to rent the Brick House property to private parties unrelated to the museum, such as for weddings or corporate meetings, with no such events to occur on the same weekend as a museum-related event. Appellee-Applicant proposes to make the Brick House available for up to six large one-day events per year with from 150 to no more than 300[12] persons, and up to eight additional medium one-day events per year with an average over the year of 60 persons per event but no greater than 149 persons at any event; that is, a maximum for these medium-sized events of a total of 480 persons per year. Appellee-Applicant proposes that no more than 90 vehicles[10] may be present on the premises at any time in connection with any such event. Appellee-Applicant proposes to require that all such events be held by invitation only, and proposes to staff the South Gate with sufficient security personnel to examine the invitations and to open and close the gate, so that the security code (see footnote 2 above) will not be released to large numbers of people and so that the numbers limitations may be enforced. For any such private events, Appellee-Applicant proposes to post museum personnel as parking facilitators to direct guest parking on the Brick House property, to prevent guests from parking along Quaker Smith Point Road, and to monitor the ' no trespass' requirements for the property. Appellee-Applicant proposes that tents may be set up, amplified music may be played, and meals may be served at the private events, but that no overnight guests will be accommodated at the private events and the event and any music will end at 10 p.m. Appellee-Applicant proposes to have a total of ten museum staff on duty during any large private event, including the personnel at the gate and the parking attendants.

For this proposed rental use for private events unrelated to the Museum, we must first determine whether the proposed large and medium functions are of the ' same general character' as such uses by the residents of a very large historic single-family house plus a four-room bed-and-breakfast, for example with wedding parties held in a tent on the grounds. § 320.14(1). The evidence reflected that only up to six[11] large events a year, with a maximum of 250 people in total (both museum-related and other events) were held at the Brick House when it was in use as a private home, and no evidence was presented that the number or size of large events was any greater than that respecting any other large private home in the area, in contrast to the evidence that events under 150 and averaging 60 to 75 people were more frequently held and are also held in other similarly-sized large historic houses and small bed-and-breakfast inns in Vermont. Accordingly, for the functions to be of the same general character, the limit on large events must be set at 250 people, and the number of large events at six in total, leaving four large private events per year after the two large museum-related events are deducted.

Because of the need to use a tent or tents for these large private events, Appellee-Applicant does not anticipate holding the larger private events in the winter season. In addition, because of the fact that the Quaker Smith Point Road has a steep section unsuited to the vehicles of visitors unused to winter conditions, and because the alternate access via the North Gate giving access to the Shelburne Farms grounds is only staffed from May through October, the large private events must be limited to being held during the months of May through October, in contrast to the large museum-related events for which the guest lists will consist of persons known to the museum. The rental agreement shall clearly specify all the conditions and restrictions discussed in this section, including attendance, duration, vehicle and parking limitations, and shall require the lessee to provide attendees with information specifying the limitations applicable to them, including the limits of the Brick House property and the requirement not to trespass on adjoining private property.

With the restrictions and conditions discussed in this section, the proposed use of the Brick House for up to four large private events during the months of May through October, and for up to eight medium private events in a year, will not be detrimental to the adjoining land uses, including Appellants' residential use, nor to other uses in the district. Therefore it may be considered for approval under the conditional use standards. § 320.14(2). The proposed use of the Brick House for up to four large private events during the months of May through October, and for up to eight medium private events in a year, will not adversely affect the character of the area, and will not adversely affect the essential character of the neighborhood or district nor substantially nor permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare. §§ 1610(2) and (5).

As discussed above, the character of the area includes the public functions at Shelburne Farms, including the inn and restaurant, and environmental education center, and as well as the large single family residences on or within its property. The character of the area includes the year-round large business and private functions related to the owners of the large private houses in the area. At most, Appellants will notice the vehicles going to and from the private events on Quaker Smith Point Road, but that level of traffic will be occasional and will be that which might be expected to be generated by the business, professional, and family activities of a very large private house plus a four-room bed-and-breakfast. Appellants should not be adversely affected by the events themselves in any way.

No effect on traffic on any public road or highway has been suggested in this litigation; the only issue is the effect of the traffic generated by this use on the traffic on Quaker Smith Point Road. Very little traffic uses Quaker Smith Point Road; no evidence was presented to suggest that the traffic generated by up to four large and eight medium private one-day events in a year would have any effect on the traffic already using Quaker Smith Point Road, except if it should block the road during winter conditions. For this reason, Appellee-Applicant is encouraged but not required to consider using or requiring lessees to use a shuttle bus from another parking location for the these events, especially in the event of adverse winter conditions. The proposed use of the Brick House for up to four large private events during the months of May through October, and for up to eight medium private events in a year, will not adversely affect traffic on roads and highways in the vicinity. § 1610(3).

As limited by the conditions described above, the proposed use of the Brick House property of the Brick House for up to four large private events during the months of May through October, and for up to eight medium private events in a year, thus meets the conditional use standards of § 1610, and is hereby APPROVED.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that conditional use approval is granted for each of the uses as proposed and discussed above, and as modified by the conditions imposed above for each specific use. Please advise the Court no later than October 4, 2002 whether any party will be submitting a separate judgment order or whether the present order is sufficient; any draft judgment order shall be circulated for approval as to form and submitted[14] so that it is received by the Court on or before October 10, 2002, so that it can be issued on (or before) October 11, 2002.

Done at Barre, Vermont, this 30th day of September, 2002.

_____

Merideth Wright
Environmental Judge

**Footnotes**

[1] The application was not submitted as a Rural Mixed Use Planned Unit Development under 1640.2(D) or as an amendment to the Shelburne Farms PUD

[2] It is possible that the South Gate mechanism could be adapted to use key cards such as those used for hotel rooms, allowing the security service to cancel access for former guests or workers after their period of residence at or use of the any of the properties in the Shelburne Farms inholdings

[3] This was originally proposed and the Court ruled on summary judgment as to July and August tours; in the hearing on the merits Appellee-Applicant sought to expand this request to May-October; the expanded request is discussed below.

[4] The parties agreed at trial that the issues of the proposals' effects on existing or proposed community facilities or on renewable energy resources were not disputed and that subsections (1) and (4) of §1610 need not be further addressed by the parties or by the Court.

[5] In the application, Appellee-Applicant has not specified the duration constituting 'short-term.' However, there was testimony that this use was anticipated to be from a single week for a

visiting scholar to as much as four to six months, for example, for a semester-long internship by a museum-studies undergraduate or graduate student.

[6] Appellee-Applicant does not define these hours and does not request to conduct tours when the Museum itself is open. In the absence of such definition, we will require that the tour vehicle arrive at the Brick House property no earlier than 9 a.m. and leave the Brick House property no later than 5 p.m.

[7] Appellee-Applicant does not define which four weekdays it proposes to offer these tours. To enable Appellants or the Town to enforce the limitations on the tour use, the Court will require Appellee-Applicant to define at the beginning of each summer season which four weekdays it proposes to offer tours of the Brick House, and to inform the Town and Appellants in writing of that choice prior to the opening of the house tour season.

[8] For consistency with Appellee-Applicant's proposed condition that the apartment not be occupied during or in connection with any of the proposed private events, it appears to the Court that the minimum occupancy period would have to be six days, for example, arriving on a Sunday and leaving by noon on the following Saturday, to accommodate a wedding to be held on the Saturday afternoon and evening.

[9] The Court assumes for the purposes of this decision, as Appellee-Applicant did not present any definition or limitation, that this number includes any staff members, resident manager, resident scholars or interns, occupants of the apartment, and any temporary staff or hired help at the property for the occasion, such as catering staff, musicians, lecturers, or parking attendants.

[10] The Court assumes for the purposes of this decision, as Appellee-Applicant did not present any definition or limitation, that this number includes the vehicles of any staff members, resident manager, resident scholars or interns, occupants of the apartment, and any temporary staff or hired help at the property for the occasion, such as catering staff, musicians, lecturers, or parking attendants.

[11] Appellee-Applicant originally proposed eight large private events, but in testimony clarified that the eight proposed large events included the two proposed as museum-related events.

[12] The Court assumes for the purposes of this decision, as Appellee-Applicant did not present any definition or limitation, that this number includes any staff members, resident manager, or resident scholars or interns, and any temporary staff or hired help at the property for the occasion, such as catering staff, musicians, lecturers, or parking attendants.

[13] The Court assumes for the purposes of this decision, as Appellee-Applicant did not present any definition or limitation, that this number includes the vehicles of any staff members, resident manager, or resident scholars or interns, and any temporary staff or hired help at the property for the occasion, such as catering staff, musicians, lecturers, or parking attendants.

[14] If possible, also on computer disk in WordPerfect or plain ASCII format.